SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00392-AB-01** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ENRIQUE SALCEDO DURON,** | |
| **Defendant.** | |

Defendant is before the Court for sentencing for his role within a Mexico-based drug trafficking organization responsible for transporting enormous quantities of narcotics into Oregon. Defendant is before the court for driving approximately 200 pounds of methamphetamine concealed in suitcases in the cab of a semi-truck from California into Oregon for distribution to others. Defendant's conduct merits a sentence of 46 months' imprisonment and five years of supervised release.

## I. SENTENCING CALCULATIONS

### A. Plea Agreement and PSR Guideline Calculation

The government's guideline calculation is consistent with the Presentence Report (PSR).

| Provision | Description | Offense Level Calculation |
|---|---|---|
| USSG §2D1.1(c)(1) | Possession with Intent to Distribute Methamphetamine | **BOL = 38** |
| USSG §2D1.1(b)(18) | Safety Valve | -2 |
| | **Adjusted Offense Level** | **36** |
| USSG §3E1.1 | Acceptance of Responsibility | -3 |
| USSG §4C1.1 | Zero-Point Offender | -2 |
| | **Total Offense Level (before variance)** | **31** |

PSR ¶¶ 34-43.

Pursuant to the plea agreement, the parties have agreed to a base offense level of 38. USSG §2D1.1(c)(1). The parties have agreed that the defendant is eligible for the "safety valve" adjustment, decreasing the offense level by two. USSG §2D1.1(b)(18). The parties have agreed that the defendant does not qualify for a role adjustment under USSG §3B1.1 or §3B1.2. Defendant was neither a leader nor organizer. No role adjustment is warranted.

Pursuant to the plea agreement, the government recommends a three-level reduction for defendant's acceptance of responsibility. USSG §3E1.1. The parties agree that defendant has no criminal history points and qualifies for the two-level downward adjustment as a zero-point offender pursuant to USSG §4C1.1.

The PSR correctly calculates the defendant's criminal category of I (zero points), which produces an advisory guideline range of 108-135 months' imprisonment prior to any variance. In addition to the many reductions described in detail in the government's confidential supplement to the PSR, the government has agreed to a four-level downward variance for all 3553(a) factors including defendant's agreement to resolve this complex case without needless motions or delays. Although the plea agreement allows defendant to seek an additional downward variance to a sentence of not less than 36 months, for the reasons that follow, no further reductions are warranted.

### B. The Recommended Sentence

Pursuant to the plea agreement, the government has agreed to recommend 46 months' imprisonment to be followed by five years' supervised release. This sentence is sufficient, but not more than necessary, to achieve the goals of sentencing.

## II. ARGUMENT

### A. Factual Summary

The PSR writer accurately summarized the relevant facts of the government's investigation. PSR ¶¶ 21-29. In summary, defendant and codefendant Erick Martinez Solorio were co-workers for R&R Trucking, an interstate trucking company based in California with operations throughout the United States. Defendant was employed as a commercial long-haul semi-truck driver. In September 2024, defendant and codefendant began on a long-haul run from Los Angeles, California, to Kansas City, Missouri, with stops through several states, including Oregon. Defendant picked up a bulk quantity of narcotics to distribute along the way in addition to a commercial load destined for a customer in the Northwest.

Investigators were investigating a Mexico-based drug trafficking organization (DTO) operating in the Portland, Oregon area. In August 2024, investigators learned of a multi-pound methamphetamine trafficker distributing drugs to customers in Oregon and Washington. Through physical and electronic surveillance, including lawfully monitored communications, investigators learned that this distributor, Carlos Manuel Perez-Lopez (Perez-Lopez) expected to receive a bulk quantity of narcotics for sub-distribution to others. On September 13, 2024, investigators followed Perez-Lopez as he drove from the Portland area, making multiple stops and contacts, to a truck stop near Aurora, Oregon. There, Perez-Lopez briefly met with the defendant and codefendant near a blue semi-truck before departing north towards Portland.

Investigators lawfully stopped Perez-Lopez. A drug detecting canine alerted to the presence of drugs in the car and investigators lawfully seized approximately 20 gross kilograms of methamphetamine and 777.4 gross grams of fentanyl pills from the trunk of the vehicle Perez-Lopez was driving.

Meanwhile, other investigators were following the blue semi-truck as defendant drove the truck from the Aurora truck stop and briefly traveled northbound on the I-5. Almost immediately after investigators stopped Perez-Lopez, defendant pulled the blue semi-truck from the highway and parked at a public rest stop near Wilsonville, Oregon where he and his passenger abandoned the still-running semi-truck.

Investigators parked multiple police vehicles around the semi-truck and waited for additional investigators to arrive to safely stop the semi-truck. Once they arrived, investigators activated the red and blue police lights on their undercover vehicles to pin the semi-truck in place. Investigators approached the still-running semi-truck and announced their presence, but received no answer. Investigators opened the door to the cab to search for occupants and found had been abandoned. After obtaining a federal search warrant, investigators lawfully searched the semi-truck and located two large suitcases containing approximately 102 kilograms of methamphetamine. Below is an image depicting the enormous quantity of methamphetamine seized from the semi-truck:



Investigators searched the area around the rest stop and located the defendant and codefendant hiding in the brush less than a mile from the truck stop. Defendant identified himself as the driver of the semi-truck and admitted to knowing there were drugs inside of the suitcases in the semi-truck.

On September 16, 2024, the defendant was arrested on a complaint. On August 5, 2026, the defendant agreed to plead guilty to Count One of the Indictment.

**B. 46 Months' Imprisonment is Sufficient but Not More than Necessary**

As part of the plea agreement, the government has agreed to forbear any argument that defendant qualifies as a leader/organizer under USSG § 3B1.1. Additionally, defendant has agreed that defendant does not qualify for a mitigating role in the offense. Defendant was an ordinary participant, so no role adjustment is necessary.

As detailed in the confidential supplement to the PSR, defendant has received many sentencing concessions despite the dangers presented by the firearms he had agreed to transport.

After all other reductions, including a three-level reduction for acceptance of accountability, and an agreed upon downward variance, the government recommends a sentence of 46 months' imprisonment with five years' supervised release. This sentence is sufficient but not more than necessary to achieve the goals of sentencing.

Methamphetamine is a plague that continues to afflict this district. In 2024, Oregon Health Authority data indicates there were a total of 1,544 overdose deaths in Oregon. Oregon Health Authority Dashboard. https://oregoninjurydata.shinyapps.io/overdose/ (selecting count, and all overdose) accessed November 4, 2026 at 8:32 a.m. Of these deaths, 1,061 involved a stimulant. *Id.* (selecting count and stimulants). According to Oregon/Idaho High Intensity Drug Trafficking Area 2025 Annual Report, methamphetamine seizures in 2024 were a one of the most prevalent drugs seized by law enforcement:

Total of Illicit Drugs Seized by Oregon HIDTA Designated Enforcement Initiatives




*Source: Oregon-Idaho HIDTA Performance Management Process (PMP) – Accessed 04/27/26*

The defendant played a significant role in perpetuating one of this District's most destructive drug epidemics. Although the fentanyl crisis has understandably dominated public attention, the devastation wrought by methamphetamine remains severe and enduring. Methamphetamine ravages the lives of users and their families, exacerbates mental illness, fuels addiction, and undermines public safety. Its impact is visible throughout the District in the form of homelessness, behavioral health crises, property crime, and chronic community disorder. By distributing large quantities of methamphetamine, the defendant contributed directly to these harms and helped sustain a drug market that inflicts extraordinary damage on individuals and the community alike. The seriousness of this offense cannot be overstated.

The plea agreement in this case, and the recommended sentence accounts for the defendant's conduct and balances that against the dangerous narcotics he was trafficking as well as his lack of prior criminal history. As detailed in the government's confidential PSR supplement, defendant has received a number of significant reductions through the plea agreement in this case. No further reductions are warranted.

For these reasons, in addition to those detailed in the government's confidential supplement to the PSR, a sentence of 46 months' imprisonment and five years' supervised release is more than warranted for defendant's offense.

**C. Forfeiture**

Pursuant to the plea agreement, the defendant knowingly and voluntarily forfeits all right, title, and interest in and to any assets which are subject to forfeiture pursuant to 21 U.S.C. § 853, including: a 2013 Kenworth T660 Sleeper Extended Day Cab Truck, with its tools and appurtenances; one Samsung smartphone in a white case; and one iPhone in a black and grey case, which defendant admits were used to facilitate defendant's criminal activity in violation of

Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), as set forth in Count One of the Indictment.

## III. CONCLUSION

Based on the foregoing, the government recommends that this Court impose a sentence of 46 months' imprisonment and order defendant to pay a $100 fee assessment, followed by a five year term of supervised release, subject to the standard conditions.

Dated: November 4, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

PAUL T. MALONEY, OSB #013366
Assistant United States Attorney